Good morning, and on behalf of my colleagues, Judge Hawkins and Judge Graber and myself, welcome to the Ninth Circuit. We have today four cases on the argument calendar, but before we get to that, a number of cases have been submitted without argument. King v. Bisognano has been submitted, and Liberty Mutual v. Forsberg has been submitted. The first case on the argument calendar, is it Moli or Moli? It's Moli v. King County, and whenever you are ready, counsel. Good morning, Your Honors. May it please the Court, Matthew McReynolds on behalf of the plaintiff and appellant in this case, Fumitala Moli. I'd like to reserve three minutes of my time for rebuttal, if I may. Affirming the district court would have profoundly negative consequences for Title VII plaintiffs across the circuit. Consider the facts that we've alleged. You have an employer who anticipated that there would be requests for religious accommodation. It received our client's submission requesting religious accommodation, in which she cited several scripture passages. It offered no objections at that time, sought no clarification from her. It approved her request as to the religious aspect, and then later, months if not years later, comes to court to claim that her reliance on the Book of Deuteronomy, the Epistle of James, 1 Corinthians, and the Book of Revelation failed to inform them that she had a religious conflict. We believe that is almost a self-refuting proposition, but at a minimum, affirming that view would bring this court into conflict with the Supreme Court's decision in Abercrombie and Fitch that is in our briefing and laid down the principle that employers can't be allowed to play this game where there clearly is a religious basis for a request in front of them. We would submit this goes even further, this would go even further than did the employer there by incentivizing employers to approve requests on the front end, say nothing, and then come back much, much later and say you failed to inform us and it's too late for you to now offer any other explanation and do anything about it. So an employer in this circumstance presented with a religious objection to a work requirement, and once the employee says I have a religious objection and says nothing further, the state cannot connect the two, what the religious exemption has to do with the work? Sure. I think that's a good point of clarification that I do believe it's incumbent on the employer at that time to ask further questions and seek clarification if it needs clarification, but I also think it's important to note that that's not this case. I think we've had and you've had in front of you some requests that are indeed conclusory where plaintiffs simply ask, simply assert that they have a sincerely held religious belief and I don't believe the employer is forever barred from coming back around, especially in discovery and at trial and probing those beliefs. Counsel, the issue that I have with the complaint is that it makes clear that the plaintiff does not object in general to vaccines. She says that she has no religious objection to vaccines in general, but just this one, and why isn't there some requirement to draw some plausible factual connection between the objection to this specific vaccine and religion? It doesn't have to be reasonable, but something to make clear that there is a specific objection, not just saying, I have this objection and I really mean it, but to draw some sort of explanation of the conflict. Sure, well, I think Judge Graber, if you trace the Supreme Court's especially free exercise jurisprudence over the last 60 years, what you see is kind of surprising and you see a very wide latitude and reluctance on the part of the court to delve too deeply into beliefs. Although, I think... It's not a matter of delving, bold and hard seems to require a plausible explanation of why there's a conflict. It doesn't have to be reasonable to another observer, as long as it's sincere and as long as there's some connection at all. But I just didn't see that in this complaint, and there was an opportunity to amend, and the cases were described requiring this connection, and it wasn't amended. So what do we make of that? A couple of things, Your Honor. First, I do think that this got over what Bold and Harge describes as the minimal hurdle, and I think were the court to affirm and endorse the view of the district court here, it would create a much, much higher hurdle and it would throw a lot of uncertainty into this circuit and put a lot of plaintiffs in jeopardy who would have had, and their counsel would have had no idea that citing beliefs rooted in the four different books of the Bible I mentioned, a very earnest and heartfelt fear of spending eternity in hell, that somehow that's not good enough. So counsel, your view looking at the case that Judge Graber cited is that your client has at least alleged as much as my faith precludes me from swearing primary allegiance to human government because that's against the word of God. That's right, Your Honor. And I would offer, too, that if the court doesn't believe that what we've alleged is enough, then I do think that would be a bit of a change in the circuit's direction and would justify allowing us to amend, in which we could say much, much more about the extent of our beliefs. I'd like to turn briefly, if I could, to the second big issue that I think is before you, and that really is the issue of futility and the district court's assessment that nothing else she could say could get her over the plausibility bar because these body-as-a-temple types of objections are too vague as a matter of law. Now, since this case, while this case has been on appeal, five other circuits have addressed nearly that identical issue. Correction, six other circuits have addressed that, to my knowledge. Five of them have reversed these 12B dismissals. And those are the First Circuit, the Fourth Circuit, the Sixth, Seventh, and Eighth Circuits. We don't have time to walk through all those decisions, but I just want to give you one, what I think is a paradigmatic example, and that's from the Seventh Circuit in the Passarella decision. And I think this is important, too, because my friends on the other side have suggested that you adopt the reasoning of the dissent in Passarella. And the difference is essentially this. If you look at the majority decision in Passarella, it starts where it should with the statutory text. It takes account of the EEOC guidelines interpreting that text. It walks through the Supreme Court's many decisions involving the breadth of religious liberty protection, like Thomas, like Frazee, like Seeger and Ballard, and on and on. And it carefully considers its own circuit precedent. By contrast, the dissent that my friends on the other side urge you to follow there has no statutory analysis or interpretation, no mention of Supreme Court precedent, only suspicion and skepticism of the plaintiff's beliefs. I think following that path would be a great departure from this circuit's past approach and would be a great injustice, not only to this plaintiff, but to many others. And with that, if there are no further questions, I think I would like to reserve the remainder of my time. All right, thank you. Good morning. May it please the court. Zach Picalis for Appalachian County. To plead a failure to accommodate religion claim under Title VII, this court held in bold and hard that the plaintiff must articulate an actual conflict between her religious belief and the job requirement in question. And courts should not accept conclusory assertions of such beliefs at face value. That means, at minimum, the plaintiff must provide, to use Judge Graber's words, some plausible explanation of how the conflict arises from a religious belief as opposed to a secular one. Suppose in this case... No, no, please. Suppose in this case that the appellant said nothing about her position on other vaccines, had simply, the paragraph citing Deuteronomy and 1 Corinthians, et cetera, stated her belief that injections invade the soul of the body, et cetera, standing alone. The county could say, you've said nothing about how this relates to the job or the performance of the job? It would still be insufficient because all she provides in that instance, in that hypothetical, would be a generalized religious principle without connecting it in any way, whether reasonable or not, to the job requirement in question. And that distinguishes this case very clearly from the cases cited by Mr. McReynolds. I'm not sure I agree with that, but there certainly have been in other district court cases, and I can't recall now whether they're in circuit court cases, people who say this vaccine is different because some of the research involved fetal cells and whether one thinks that's reasonable or not is completely irrelevant, but that would draw a connection. But it seems to me that if there were not this unusual statement that some vaccines are fine, this one isn't, the body is a temple would seem to apply across the board to any, you know, any injection. So I'm not sure why you would argue that that would be insufficient if she didn't have this conflicting statement. I would cite the district court decision in the District of Hawaii case that we cited in a 28-J letter where it says there's no facial dissonance between the belief that one's body is a temple and the receipt of any vaccine. But you're right, Judge Graber, the fact that she acknowledges that she receives other vaccines makes it even less plausible and fails to provide that linkage. The most important point that I want to make is that the court need not take a position in this emerging circuit split because in the Pasarela case, which my friend describes as paradigmatic, and all the others, the plaintiff provides some linkage, even a secular linkage. Counsel, I don't read those cases the same way, but my question would be looking at paragraph 18 of the complaint where the appellant quotes her beliefs. Would it be enough in the county's view if she added a statement that said, for example, and God has spoken to me personally and said that if I take the COVID vaccine, that will be a defilement of my body and I will be sentenced to hell forever. Would that be enough? It wouldn't. It gets it closer because it provides some linkage. So God, if someone alleges that they have a personal relationship with the Lord who has spoken to them and told them that if they take this particular vaccine, that they will go to hell forever, that wouldn't help in the county's view? It would not get it over the hurdle, but not for the reason that I've articulated before. The current complaint, there's simply no conflict, whether religious or indirect. In that instance, there, of course, would be how can you say there's no conflict when the complaint specifically says God has given me a choice to live eternity in heaven or hell? The COVID vaccine is a defilement of my temple and it will condemn my spirit and soul to eternity in hell after I die. If we're not to go into the rationality of the religious belief, which the Supreme Court has instructed us, how could it be that your answer is saying that scripture has told me that I will go to hell if I take this vaccine, that there's no connection there? I don't understand that. I'll explain it, Your Honor. It's a isolated moral teaching, a highly individualized belief. The EEOC guidance drawing from Seeger and Welsh makes it clear that the belief must be part of a comprehensive system of beliefs, not just an isolated teaching. It's difficult to conceive of a more isolated teaching than the divine directive hypothetical. So in the county's view that in my hypothetical, it would not be logical enough. It's not that it's illogical. It's that to use the language of Seeger, it doesn't occupy a place in the life of the possessor that's equivalent to the Orthodox belief in God. It's not held with the strength of religious conviction. So why is that different than the Jehovah's Witness case that we were talking about when your friend was arguing? Why is the Jehovah's Witness case work and this doesn't? In the Bold and Harge case? Yes. Yes, because she provides a general religious principle not to swear oaths and explains exactly why, in her view, the California constitutional requirement violated that principle by making her swear an oath above. Now, it's not that it was more reasonable or less reasonable. It's that she provided some explanation. I'm missing your explanation because here, she has said the requirement is that I get the COVID vaccine and that will send me to hell. And in the case we're talking about, it's I can't swear a secular oath because it's against my religion. I'm having trouble understanding why one works and the other doesn't. Because one is particularized to the religious belief in question and the other could apply literally to any conceivable job requirement that an employee disagrees with for any reason. It's so fun to use Judge Owens' example in the Detweiler oral argument, for example, he asked my friend, Mr. McReynolds, if a plaintiff said, well, I believe that my mental health would be affected and my body, my mental health is very important to my body as a temple. Would that give him the employee a reason to object to working more than three days a week? Mr. McReynolds said, yes. The problem here, if this complaint is sufficient, then it means that literally all a plaintiff has to do is provide any religious sounding objection, whether I believe this is sinful or I believe this will send me to hell or God spoke to me and automatically overcomes the prima facie hurdle. Counsel, I have a slightly different question because I believe that your friend on the other side has asked again for an opportunity to amend to add that connection. Presumably, there could be an explanation that would suffice to draw the connection that shows an actual conflict. What is your position about that? Three points, Your Honor. First, plaintiff has been given now four opportunities to provide some explanation of what would be added to the now third amended complaint to get her over the line. The opposition to the motion to dismiss, opening brief here, reply brief, counsel's presentation. Not one word has been said as to what would be added to a third amended complaint to get over the hurdle. Second, the district court specifically allowed the plaintiff to amend her complaint to add these specific allegations of a religious conflict and she stipulated in the district court that her earlier complaint failed to do so. For the reasons I've explained, the county's position is that the second amended complaint also fails to do so and there's no indication of how a third amended complaint would get over the line. The third reason is that what's provided to the employer is what has to be said. She can't provide a totally different explanation of her religious beliefs. She's, in Judge Emmerich's language in the Craven case, confined to what was in the accommodation request put forward to the county under the notice requirement of the prima facie case. Was it the county's position at any point in the litigation that her lack of objection to the administration of other vaccines lessened the impact of her claim of a religious exemption? Yes, that has been absolutely central to the county's position. So the county, in effect, looked at that and said, we believe your belief system is inconsistent. Yes, in litigation, that's exactly the position the county's taken, that it renders implausible the generalized body as temple or condemnation objection that she's asserted. It's illogical in the county's view that someone could have a religious belief that one vaccination defiles their temple but another doesn't and that we should decide that that illogic precludes her from making the objection. I see I'm out of time to answer the question. Yes. It's not that it's illogical, it's that there's nothing in the complaint or the accommodation request that makes that connection, not a religious principle nor even a secular principle as in the other circuit decisions cited by my friend on the other side. That makes this case uniquely deficient in terms of the complaint that she's pleaded because it just doesn't provide that actual conflict with vaccination that's required under Bold and Harge. And for those reasons, the court should affirm. Thank you, counsel. You have a little bit of time left. Thank you, your honors. I'd like to make just three or four real quick points. First of all, on the issue of the so-called one-off objection that the district court has mentioned and that I hear my friend mentioning quite a bit in his response. As I read the district court's decision and what Mr. Bacalus has has now said. If we carry ourselves back to the first instance of the original sin, it would not be enough from the county's standpoint that God told Eve not to eat the one fruit in the that was deemed forbidden. That would not pose a religious conflict in the county's view. As I as I hear it, that would be a one-off objection. And that's a remarkable proposition that I don't think this this court should endorse just just quickly. I read the other circuit decisions. The recent circuit decisions the way you do judge Bennett. I think there's a wide variety some very ethereal much more ethereal views that are endorsed by those those courts. The lucky decision in particular. I would point out from the sir. The Sixth Circuit essentially says that where someone says she she sought God she prayed she was directed not to take the vaccine and she followed that that is sufficient and I can represent to the court that if given the opportunity to amend that we would assert that Miss Molly felt that she was directed by God not to take the vaccine. Once you conclude Council short just to once you quickly conclude. Okay. Sure title set the interpretation being advanced by the district court and and my friend on the other side is a defense lawyers drain. But title 7 was not written for lawyers. It was written for laypeople. It was written for Justice and for those reasons would ask the court to reverse.  We thank we thank counsel for their arguments in the case just argued is submitted.
judges: HAWKINS, GRABER, BENNETT